**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Fort Lauderdale Division**
**www.flsb.uscourts.gov**

| | |
|---|---|
| In re: | Chapter 11 |
| ADVANCE CASE PARTS, INC., | Case No. 19-14930-RBR |
| Debtor. _____/ | |

**DEBTOR'S EMERGENCY APPLICATION FOR APPROVAL, ON AN INTERIM AND FINAL BASIS, OF EMPLOYMENT OF EYAL BERGER AND THE LAW FIRM OF AKERMAN LLP AS GENERAL BANKRUPTCY COUNSEL FOR THE DEBTOR-IN-POSSESSION *NUNC PRO TUNC* TO THE PETITION DATE**

**(Emergency Hearing Requested for Thursday, April 18, 2019)**

**Statement of Exigent Circumstances**

Without general bankruptcy counsel, the Debtor is technically unable to proceed with this case. Akerman LLP will play an integral role in the first 21 days of this Chapter 11 case. Among other things, the Debtor will need Akerman LLP's assistance in stabilizing business operations and addressing issues related to the "first day" hearings and related orders.

ADVANCE CASE PARTS, INC. (the "Debtor"), pursuant to 11 U.S.C. §327(a), Fed. R. Bankr. P. 2014 and 2016, and Local Rules 2014-1(A) and 2016-1(A), hereby files this *Emergency Application for Approval, on an Interim and Final Basis, of Employment of Eyal Berger and the law firm of Akerman LLP Nunc Pro Tunc to the Petition Date* (the "Application") seeking approval, on interim and final basis, of the employment of Eyal Berger ("Berger") and the law firm of Akerman LLP ("Akerman"), to represent the Debtor as general bankruptcy counsel in this Chapter 11 case, *nunc pro tunc,* to the Petition Date.  In support of this Application, the Debtor relies upon the *Declaration of Eyal Berger on behalf of Akerman LLP, as Proposed Counsel for the Debtor-In-Possession* attached hereto as **Exhibit "A"** (the "Berger Declaration") and the *Declaration in Support of the Debtor's Chapter 11 Petition and Request*

1

*for First Day Relief* (the "First Day Declaration"). In further support of this Application, the Debtor respectfully represents as follows:

### I. JURISDICTION

1. This Court has jurisdiction over this case pursuant to 28 U.S.C. 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A). Venue is proper in this District pursuant to 28 U.S.C. §1408. The statutory predicate for the relief requested herein is 11 U.S.C. §327(a), Fed. R. Bankr. P. 2014 and 2016, and Local Rules 2014-1(A) and 2016-1(A).

### II. BACKGROUND AND BUSINESS OPERATIONS

2. On April 16, 2019, Debtor, Advance Case Parts, Inc. filed a voluntary petition in this Court for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

3. As of the date hereof, no creditor committees have been appointed in any case. In addition, no trustees or examiners have been appointed.

4. The Debtor is operating its businesses and managing its affairs as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5. For a detailed description of the Debtor, its operations, assets and liabilities, the Debtor respectfully refers the Court and parties-in-interest to the First Day Declaration.

### III. RELIEF REQUESTED

6. By this Application, the Debtor seeks to employ and retain Eyal Berger, Esq. and and the law firm of Akerman as its general restructuring and bankruptcy counsel with regard to the filing of its Chapter 11 petition and the prosecution of its respective Chapter 11 case. Accordingly, the Debtor respectfully requests the entry of an order pursuant to Section 327(a) of the Bankruptcy Code, followed by the entry of a final order to be entered at a hearing to be held twenty-one (21) days later, authorizing the Debtor to employ and retain Eyal Berger, Esq. and

48581344;1

the law firm of Akerman as its general bankruptcy counsel under a general retainer to perform the legal services that will be necessary during this Chapter 11 case as more fully described below.

7. Prior to the commencement of its Chapter 11 case, the Debtor sought the services of Akerman principally with respect to advice regarding restructuring matters in general, and the preparation for and potential commencement and prosecution of Chapter 11 case for the Debtor. The Debtor believes that the continued representation by its pre-petition restructuring counsel, Akerman, is critical to the Debtor's efforts to restructure its business because Akerman has extensive experience and expertise in complex commercial reorganization cases and has become very familiar with the Debtor's business, legal and financial affairs. Accordingly, Akerman is well-suited to guide the Debtor through the Chapter 11 process.

### A.  Services to be Provided

8. The services of Akerman are necessary to enable the Debtor to execute faithfully its duties as debtor-in-possession. Subject to order of this Court, the law firm of Akerman will be required to render, among others, the following services to the Debtor:

(a) advise the Debtor with respect to its powers and duties as debtor and debtor-in-possession in the continued management and operation of its business and properties;

(b) attend meetings and negotiate with representatives of creditors and other parties-in-interest and advise and consult on the conduct of the case, including all of the legal and administrative requirements of operating in Chapter 11;

(c) advise the Debtor in connection with any contemplated sales of assets or business combinations, including the negotiation of sales promotion, liquidation, stock purchase, merger or joint venture agreements, formulate and implement bidding procedures, evaluate competing offers, draft appropriate corporate documents with respect to the proposed sales, and counsel the Debtor in connection with the closing of such sales;

(d) advise the Debtor in connection with post-petition financing and cash collateral arrangements, provide advice and counsel with respect to pre-petition financing arrangements, and provide advice to the Debtor in connection with the emergence financing and capital structure, and negotiate and draft documents relating thereto;

(e) advise the Debtor on matters relating to the evaluation of the assumption, rejection or assignment of unexpired leases and executory contracts;

(f) provide advice to the Debtor with respect to legal issues arising in or relating to the Debtor's ordinary course of business including attendance at senior management meetings, meetings with the Debtor's financial and turnaround advisors, and provide advice on employee, workers compensation, employee benefits, labor, tax, insurance, securities, corporate, business operation, contracts, joint ventures, real property, press/public affairs and regulatory matters;

(g) take all necessary action to protect and preserve the Debtor's estate, including the prosecution of actions on its behalf, the defense of any actions commenced against the estate, negotiations concerning all litigation in which the Debtor may be involved and objections to claims filed against the estate;

(h) prepare on behalf of the Debtor all motions, applications, answers, orders, reports and papers necessary to the administration of the estate;

(i) negotiate and prepare on the Debtor's behalf a plan of reorganization, disclosure statement and all related agreements and/or documents, and take any necessary action on behalf of the Debtor to obtain confirmation of such plan;

(j) attend meetings with third parties and participate in negotiations with respect to the above matters;

(k) appear before this Court, any appellate courts, and the U.S. Trustee, and protect the interests of the Debtor's estate before such courts and the U.S. Trustee; and

(l) perform all other necessary legal services and provide all other necessary legal advice to the Debtor in connection with this Chapter 11 case.

9. Akerman is willing to act on behalf of the Debtor as set forth above.

B. **Terms of Retention**

10. Akerman was engaged by the Debtor for restructuring services on April 8, 2019 and in connection therewith received an initial retainer from Debtor, Advance Case Parts, Inc., in

48581344;1

the amount of $35,000 (the "Prepetition Retainer").  Akerman applied amounts equal to $29,500 of its Prepetition Retainer on April 16, 2019 to cover costs (collectively, the "Prepetition Payment").[1]  As a result, Akerman will have a post-petition retainer in the amount of $5,500 subject to adjustment depending on the final reconciliation of pre-petition fees and expenses against the Prepetition Payment (the "Postpetition Retainer").  To that end, promptly after the Petition Date, Akerman will reconcile the amounts incurred for fees and expenses pre-petition and, to the extent such fees and expenses do not equal the Prepetition Payment, then Akerman shall return such excess to and create the Postpetition Retainer accordingly.  To the extent that such prepetition fees and expenses exceed the Prepetition Payment, then Akerman shall waive such excess.  All post-petition fees and expenses incurred by Akerman, in excess of the Postpetition Retainer, shall be paid from a portion of the Debtor's cash collateral and future revenues upon approval of the Court.

11.    Akerman intends to apply to the Court for allowance of compensation for professional services rendered and reimbursement of charges and disbursements incurred in these Chapter 11 cases in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the orders of this Court, including but not limited to for the filing fees associated with these Chapter 11 cases, which were charged on Akerman's corporate credit card after the Debtor's petition was filed. Akerman will seek compensation for the services of each attorney and paraprofessional acting on behalf of the Debtors in this case at the then-current rate charged for such services.

12.    Consistent with the firms policy with respect to its other clients, Akerman will continue to charge the Debtor for all other services provided and for other charges and disbursements incurred in the rendition of services.  These charges and disbursements include,

---

[1] The Prepetition Payment reflects a courtesy discount of $4,868.00.

48581344;1

among other things, costs for telephone charges, photocopying, travel, computerized research, messengers, couriers, postage, witness fees and other fees related to trials and hearings.

13.     Akerman has agreed to accept as compensation such sums as may be allowed by the Court on the basis, among others, of the professional time spent, the rates charged for such services, the necessity of such services to the administration of the estates, the reasonableness of the time within which the services were performed in relation to the results achieved, and the complexity, importance and nature of the problems, issues or tasks addressed in this case.

14.     Other than as set forth herein and in the Berger Declaration, no arrangement is proposed between the Debtor and Akerman for compensation to be paid in this case, and no agreement or understanding exists between Akerman and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case.

15.     No previous request for the relief sought in this Application has been made to this Court or any other Court.

## IV.     BASIS FOR RELIEF REQUESTED

16.     Continued representation of the Debtor by its restructuring counsel, Akerman, is critical to the success of the Debtor's reorganization efforts because Akerman is and has become very familiar with the Debtor's business, financial and legal affairs.

17.     The Debtor has selected the firm of Akerman as its attorneys because of Akerman's experience with and knowledge of the Debtor and its business, as well as their extensive experience, knowledge and expertise in the field of debtors and creditor rights and business reorganizations under Chapter 11 of the Bankruptcy Code.

18.     The Debtors desire to employ the firm of Akerman under a general retainer because of the extensive legal services that will be required in connection with this Chapter 11 case and the firm's familiarity with the business of the Debtor.

## V. DISINTERESTEDNESS OF PROFESSIONALS

19. Except as set forth in the Berger Declaration, to the best of the Debtor's knowledge, the shareholders, counsel and associates of Akerman: (a) do not have any connection with the Debtor, its creditors, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any other party in interest, or their respective attorneys and accountants; (b) are disinterested persons, as that term is defined in Section 101(14) of the Bankruptcy Code; and (c) do not hold or represent any interest adverse to the Debtor's estate.

20. More specifically, as set forth in the Berger Declaration:

   (a) Neither Akerman nor any attorney at the firm holds or represents an interest adverse to the Debtor's estate.

   (b) Neither Akerman nor any attorney at Akerman is or was a creditor, an equity holder, or an insider of the Debtor, except that Akerman previously rendered legal services to the Debtor for which it was compensated.

   (c) Neither Akerman nor any attorney at Akerman is or was, within two years before the Petition Date, a director, officer or employee of the Debtor.

   (d) Akerman does not have an interest materially adverse to the interests of the Debtor's estate or of any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the Debtor, or for any other reason.

## VI. REQUEST FOR INTERIM RELIEF

21. Section 327(a) of the Bankruptcy Code provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

22. Bankruptcy Rule 2014(a) requires that an application for retention include:
> [S]pecific facts showing the necessity for the employment, the
> name of the [firm] to be employed, the reasons for the selection,
> the professional services to be rendered, any proposed arrangement
> for compensation, and, to the best of the applicant's knowledge, all

>of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

23. Pursuant to the Bankruptcy Rule 6003, the court may grant relief regarding an application pursuant to Bankruptcy Rule 2014 to retain a professional within 21 days after the filing of the petition to the extent the relief is necessary to avoid immediate and irreparable harm. Bankruptcy Rule 6003, however, does not expressly forbid courts from entering interim orders approving professional retentions during the first 21 days of a chapter 11 cases. *See, e.g., First NLC Fin. Servs, LLC,* Case No. 08-10632 (Bankr. S.D. Fla. Jan. 28, 2008); *In re TOUSA, Inc., et al.*, Case No. 08-10928-BKC-JKO (Bankr. S.D. Fla. Jan. 31, 2008) (approving interim retentions of financial advisor and legal counsel on interim basis within first 20 days of chapter 11 case).

24. First, according to the Advisory Committee note to Bankruptcy Rule 6003, the standard employed in Bankruptcy Rule 6003 is taken from Bankruptcy Rule 4001(b)(2) and (c)(2), and decisions under those provisions should provide guidance for the application of Bankruptcy Rule 6003. Bankruptcy Rules 4001(b)(2) and (c)(2) are well understood and are the model for numerous first-day motions, such as obtaining credit and seeking use of cash collateral. That process is well established: if the court is so disposed, the partial relief is granted for the interim before the final hearing can be conducted. Later, after further opportunity for other parties in interest to consider the application and to object, the court, if so disposed will grant the balance of the relief requested.

25. Second, Bankruptcy Rule 6003 is entitled "Interim and Final Relief Immediately Following the Commencement of the Case...." Thus, the very title of the Bankruptcy Rule contemplates that relief may be granted on an interim basis.

26. Interim relief is clearly justified and appropriate in the context of this Application.

27. It is well recognized in this district and others that a corporation must be represented by counsel to appear in court because it is merely an artificial entity that can only act through its agents and thus may not appear pro se. *See, e.g., Palazzo v. Gulf Oil Corp.,* 764 F.2d 1381, 1385 (11th Cir. 1985) ("Corporations and partnerships, both of which are fictional legal persons, obviously cannot appear for themselves personally . . . they must be represented by licensed counsel."); *see also In re K.M.A., Inc.*, 652 F.2d 398, 399 (5th Cir. 1981) ("The law is clear that a corporation as a fictional legal person can only be represented by licensed counsel."); *Jones v. Niagara Frontier Transp. Authority*, 722 F.2d 20, 22 (2d Cir. 1983) ("[I]t is established that a corporation, which is an artificial entity that can only act through agents, cannot proceed *pro se*."). This requirement is further established by Local Rule 1074-1, which provides that "[c]orporations, partnerships, trusts and other non-individual parties may appear and be heard only through counsel permitted to practice in the Court pursuant to Local Rule 2090-1."

28. Accordingly, without general bankruptcy counsel, the Debtor is technically unable to proceed with its case. Akerman will play an integral role in the first 21 days of this Chapter 11 case. Among other things, the Debtor will need Akerman's assistance in stabilizing business operations, negotiating with key creditor constituencies and potential purchasers, addressing issues related to the "first day" hearing and related orders, constructing a business plan and plan of reorganization and defining the Debtor's path post-restructuring.

29. Accordingly, the Debtor submit that it has satisfied the requirements of Bankruptcy Rule 6003, which supports entry of an order authorizing the Debtor to retain and employ Akerman on an interim basis and to compensate Akerman for any services rendered during that interim period in accordance with the Bankruptcy Code and the interim compensation procedures that may be established in this case. This interim form of relief ensures the availability of Akerman's full resources to the Debtor during a critical period in this case, while preserving the ability of all parties in interest, including the U.S. Trustee, to object to this application on a final basis.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order: (i) authorizing the Debtor's retention of Eyal Berger, Esq. and the law firm of Akerman, LLP on an interim basis upon the terms outlined in this Application *nunc pro tunc* to the Petition Date; (ii) setting a final hearing on this Application at least twenty-one (21) days from the date of the interim order; and (iii) granting such other and further relief as is just and proper.

Date: April 15, 2019                              Respectfully submitted,

                                                   Advance Case Parts, Inc.

                                                   By: _____
                                                   Paul Podhurst, CEO

## **SERVICE LIST**

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

48581344;1

# EXHIBIT "A"

# (BERGER DECLARATION)

48581344;1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
**Fort Lauderdale Division**
www.flsb.uscourts.gov

In re:                                                                                        Chapter 11

ADVANCE CASE PARTS, INC.,                                        Case No. 19-14930-RBR
      Debtor.
_____/

**DECLARATION OF EYAL BERGER, ESQ. IN SUPPORT OF THE DEBTOR'S EMERGENCY APPLICATION FOR APPROVAL, ON AN INTERIM AND FINAL BASIS, OF EMPLOYMENT OF EYAL BERGER AND THE LAW FIRM OF AKERMAN LLP AS GENERAL BANKRUPTCY COUNSEL FOR THE DEBTOR-IN-POSSESSION *NUNC PRO TUNC* TO PETITION DATE**

Eyal Berger, Esq. makes this Declaration pursuant to 28 U.S.C. § 1746, and states:

1. I am an attorney and shareholder of the law firm of Akerman LLP ("Akerman"). I am familiar with the matters set forth herein and make this Affidavit in support of the *Debtor's Emergency Application for Approval, on an Interim and Final Basis, of Employment of Eyal Berger and the Law Firm of Akerman LLP as General Bankruptcy Counsel for the Debtor-in-Possession Nunc Pro Tunc to the Petition Date* (the "Application").

2. In support of the Application, I disclose the following:

    a. Unless otherwise stated, this Affidavit is based upon facts of which I have personal knowledge.

    b. In preparing this Affidavit, I have reviewed the list of all creditors and equity security holders of the Debtor provided to us by the Debtor. Akerman maintains a computerized conflicts check system. Akerman has compared the information obtained thereby with the information contained in its client and adverse party conflict check system. The facts stated in this Affidavit as to the relationship between Akerman and the Debtor, the Debtor's creditors, the United States Trustee, other persons employed by the Office of the United States

Trustee, and those persons and entities who are defined as disinterested persons in Section 101(14) of the Bankruptcy Code, are based on the results of my review of Akerman's conflict check system. Based upon such search, Akerman does not represent any entity in any matter involving or adverse to the Debtor or which would constitute a conflict of interest or impair the disinterestedness of Akerman in respect of its representation of the Debtor herein.

3. Akerman's client and adverse party conflicts check system is comprised of records regularly maintained in the course of business by Akerman, and it is the regular practice of Akerman to make and maintain these records. The system reflects entries that are noted at the time the information becomes known by persons whose regular duties include recording and maintaining this information. I regularly use and rely upon the information contained in the system in the performance of my duties with Akerman and in my practice of law.

4. Akerman neither holds nor represents any interest adverse to the Debtor and is a disinterested person within the scope and meaning of Section 101(14) of the Bankruptcy Code.

5. Neither I, nor Akerman, have or will represent any other entity in connection with these cases, and neither I, nor Akerman, will accept any fee from any other party or parties in these cases, except the Debtor-In-Possession, unless otherwise authorized by the Court.

6. According to Akerman's records, Akerman was engaged by the Debtor for restructuring services on April 8, 2019 and in connection therewith received an initial retainer from Debtor, Advance Case Parts, Inc. in the amount of $35,000 (the "Prepetition Retainer"). Akerman applied amounts equal to $29,500 of its Prepetition Retainer on April 16, 2019 to cover costs (collectively, the "Prepetition Payment").[2] As a result, Akerman will have a post-petition retainer in the amount of $5,500 subject to adjustment depending on the final reconciliation of pre-petition fees and expenses against the Prepetition Payment (the "Postpetition Retainer"). To

---

[2] The Prepetition Payment reflects a courtesy discount of $4,868.00.

that end, promptly after the Petition Date, Akerman will reconcile the amounts incurred for fees and expenses pre-petition and, to the extent such fees and expenses do not equal the Prepetition Payment, then Akerman shall return such excess to and create the Postpetition Retainer accordingly.  To the extent that such prepetition fees and expenses exceed the Prepetition Payment, then Akerman shall waive such excess.  All post-petition fees and expenses incurred by Akerman, in excess of the Postpetition Retainer, shall be paid from a portion of the Debtor's cash collateral and future revenues upon approval of the Court.

7. The professional fees and costs to be incurred by Akerman in the course of its representation of the Debtor in this case shall be subject in all respects to the application and notice requirement of 11 U.S.C. §§ 330 and 331 and Fed. R. Bank. P. 2014 and 2016.

8. The hourly rates for the attorneys at Akerman range from $200 to $800 per hour. The hourly rates of Eyal Berger and Catherine Douglas Kretzschmar, the attorneys who will be principally working on this case, are $500, and $385, respectively.[3]  The hourly rates for the paraprofessionals at Akerman range from $100 to $235.  Akerman reserves the right to increase its hourly rates in accordance with its normal and customary business practices.

9. There is no agreement of any nature as to the sharing of any compensation to be paid to Akerman, except between the attorneys of Akerman.  No promises have been received by Akerman, nor any member or associate thereof, as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

10. No attorney at Akerman holds a direct or indirect equity interest in the Debtor, including stock or stock warrants, or has a right to acquire such an interest.

11. No attorney at Akerman is or has served as an officer, director or employee of the Debtor within two years before the Petition Date.

---

[3] These hourly rates reflect courtesy discounts in the amount of $15.00 and $30.00, respectively.

12. No attorney at Akerman is in control of the Debtor or is a relative of a director, officer or person in control of the Debtor.

13. No attorney at Akerman is a general or limited partner of a partnership in which the Debtor are also a general or limited partner.

14. No attorney at Akerman is or has served as an officer, director or employee of a financial advisor that has been engaged by the Debtor in connection with the offer, sale or issuance of a security of the Debtor within two years before the Petition Date.

15. No attorney at Akerman has represented a financial advisor of the Debtor in connection with the offer, sale or issuance of a security of the Debtor within three years before the Petition Date.

16. No attorney at Akerman has any other interest, direct or indirect, that may be affected by the proposed representation.

17. Except as set forth herein, no attorney at Akerman has had or presently has any connection with the above-captioned Debtor or the estate on any matters in which Akerman is to be engaged, except that I, Akerman or our attorneys may represent or may have represented certain of the Debtor's creditors in matters unrelated to this case.

18. Specifically, a search of Akerman's conflicts check system revealed the following matters, which do not impair my or Akerman's disinterestedness or constitute any conflict of interest:

    (a) Ally is a potential creditor of Debtor, Advance Case Parts, Inc. Akerman has in the past and/or currently represents a Ally Financial, Inc., and certain of its affiliates in matters wholly unrelated to this bankruptcy case;

    (b) AT&T is a potential creditor of Debtor, Advance Case Parts, Inc. Akerman has in the past and/or currently represents AT&T in matters wholly unrelated to this bankruptcy case;

(c) Capital One is a potential creditor of Debtor, Advance Case Parts, Inc. Akerman has in the past and/or currently represents Capital One, N.A. in matters wholly unrelated to this bankruptcy case;

(d) JPMorgan Chase Bank, N.A. is a potential creditor of Debtor, Advance Case Parts, Inc. Akerman has in the past and/or currently represents JPMorgan Chase Bank, N.A in matters wholly unrelated to this bankruptcy case;

(e) Chernoff Sales, Inc. is a potential creditor of Debtor, Advance Case Parts, Inc. Akerman has in the past and/or currently represents Chernoff Sales, Inc. in matters wholly unrelated to this bankruptcy case;

(f) Crossroads Financial Group, LLC is a potential creditor of Debtor, Advance Case Parts, Inc. Akerman has in the past and/or currently represents a Crossroads Financial, LLC in matters wholly unrelated to this bankruptcy case;

(g) Dell Financial Services LLC is a potential creditor of Debtor, Advance Case Parts, Inc. Akerman has in the past and/or currently represents Dell, Inc. and/or certain of its affiliates in matters wholly unrelated to this bankruptcy case;

(h) Discover is a potential creditor of Debtor, Advance Case Parts, Inc. Akerman has in the past and/or currently represents Discover Financial Services in matters wholly unrelated to this bankruptcy case;

(i) Florida Power & Light Company is a potential creditor of Debtor, Advance Case Parts, Inc. Akerman has in the past and/or currently represents Florida Power & Light Company in matters wholly unrelated to this bankruptcy case;

(j) Publix Super Markets, Inc. is a potential creditor of Debtor, Advance Case Parts, Inc. Akerman has in the past and/or currently represents Publix Super Markets, Inc. in matters wholly unrelated to this bankruptcy case;

(k) Safeco Insurance is a potential creditor of Debtor, Advance Case Parts, Inc. Akerman has in the past and/or currently represents Safeco Insurance and certain of its affiliates in matters wholly unrelated to this bankruptcy case;

(l) The School District of Palm Beach County is a potential creditor of Debtor, Advance Case Parts, Inc. Akerman has in the past and/or currently represents the School District of Palm Beach County and certain of its affiliates in matters wholly unrelated to this bankruptcy case;

(m) The School District of Miami Dade County is a potential creditor of Debtor, Advance Case Parts, Inc. Akerman has in the past and/or

      currently represents the/or School District of Miami Dade County and certain of its affiliates in matters wholly unrelated to this bankruptcy case;

(n) Penn Mutual Life Insurance is a potential creditor of Debtor, Advance Case Parts, Inc. Akerman has in the past and/or currently represents Penn Mutual Life Insurance and certain of its affiliates in matters wholly unrelated to this bankruptcy case;

(o) T-Mobile is a potential creditor of Debtor, Advance Case Parts, Inc. Akerman has in the past and/or currently represents T-Mobile USA, Inc. and/or certain of its affiliates in matters wholly unrelated to this bankruptcy case.

19. In the event and to the extent that the Debtor is involved in litigation with a conflicted party, the Debtor will utilize conflict counsel in regard to such litigation and Akerman will not be involved in any such litigation.

20. This concludes my declaration.

### 28 U.S.C. § 1746 Declaration

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 16, 2019

_____
EYAL BERGER, ESQ.