# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### Fort Lauderdale Division
### www.flsb.uscourts.gov

In re:                                                    Chapter 11

ADVANCE CASE PARTS, INC.,                                 Case No. 19-14930-RBR

                    Debtor.
_____/

### DEBTOR'S EMERGENCY AGREED MOTION FOR ORDER AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL, FACTOR ACCOUNTS,  AND PROVIDE ADEQUATE PROTECTION

**(Emergency Hearing Requested for Thursday, April 18, 2019, at 10:00 a.m.)**

### STATEMENT OF EXIGENT CIRCUMSTANCES

The Debtor requests an emergency hearing in this matter on April 18, 2019. Without the immediate authorization to use cash collateral and provide adequate protection as detailed herein, the Debtor will be irreparably harmed because the Debtor will not be able to acquire goods and services necessary for its day-to-day operations or generally maintain and preserve the going concern, enterprise value of the business.

Prior to the filing of this Chapter 11 case, the Debtor and CDS Business Services, Inc. d/b/a Newtek Business Credit (the "**Lender**") have negotiated the consensual use of the Lender's cash collateral in accordance with a 13-week budget attached to this Motion as Exhibit "A" (the "**Budget**") and adequate protection in the form of replacement liens on all post-petition assets acquired by the Debtor in the same priority as existed in favor of Lender as of the commencement of this case.

ADVANCE CASE PARTS, INC. (the "**Debtor**") seeks the entry of an agreed Order authorizing the Debtor to use its cash collateral on an interim and final basis, factor accounts pursuant to existing Pre-Petition Factor Agreements (defined below), and to provide Lender with

48579059;4

adequate protection as detailed herein pursuant to 11 U.S.C. Sections 361 and 363 (the "**Motion**").[1]

## RELIEF REQUESTED

An immediate and critical need exists for the Debtor to be permitted access to Cash Collateral in order to continue to operate its businesses and preserve its ongoing, enterprise value. Therefore, the Debtor seeks an emergency interim hearing (the "**Interim Hearing**") in accordance with Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**").  At the Interim Hearing, the Debtor will seek entry of an Interim Order, a copy of which is attached hereto as **Exhibit "B."**  By this Motion, the Debtor further seeks a final hearing (the "**Final Hearing**") on this Motion, to be held approximately 30 days after the Interim Hearing in accordance with Bankruptcy Rule 4001(b)(2) and (3).  Finally, the Debtor seeks to provide Lender with adequate protection in the form of: (i) replacement liens securing any cash collateral used by the Debtor that are equal in validity and priority as any liens the Lender held against the Debtor's collateral as of the commencement of this case; (ii) monthly payments of $17,500; and (iii) allowance of super-priority administrative expense claims for any diminution of value exceeding the value of the replacement liens and adequate protection payments.

## FACTS RELATED TO RELIEF REQUESTED

1.       On April 16, 2019 (the "**Petition Date**"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of Title 11 of the United States Code (the Bankruptcy Code ). Since that time, the Debtor has operated as a debtor-in-possession pursuant to Sections

---

[1] In support of the Motion, the Debtor relies on the *Declaration of Paul Podhurst in Support of Chapter 11 Petition and First Day Motions* to be filed with the Court (the "**First Day Declaration**").  The Motion is being filed pursuant to 11 U.S.C. Sections 361 and 363, Bankruptcy Rules 4001 and 9014, Local Rules 9013-(F) and (G), and this Court's *Guidelines for Motions Seeking Authority to Use Cash Collateral and Motions Seeking Approval of Postpetition Financing*  (the "**Court Guidelines**").

1107 and 1108 of the Bankruptcy Code.  As of the date hereof, no creditors' committee has been appointed in this case.  In addition, no trustee or examiner has been appointed.  For a detailed description of the Debtor, its operations and assets and liabilities, the Debtor respectfully refers the Court and parties-in-interest to the First Day Declaration.

2.       Any cash or cash equivalents, funds or proceeds of or derived from certain of the collateral securing the obligations of the Debtor to the Lender under the Pre-Petition Loan Agreement (defined below) constitute cash collateral within the meaning of Section 363 of the Bankruptcy Code (the "**Cash Collateral**").  The Cash Collateral includes, without limitation, the Debtor's cash or cash equivalents maintained in the Debtor's bank accounts and proceeds received by the Debtor from the sale of inventory and collection of accounts receivables.

3.       Prior to the Petition Date, the Debtor and Lender were parties to an Accounts Receivable Administration Agreement dated February, 2016 and an Inventory Advance Agreement secured by a UCC-1 Finance Statement recorded as Instrument No. 201606526500 in the Florida Secured Transaction Registry on February 17, 2016 (hereinafter, together with all amendments thereto and modifications thereof, the "**Pre-Petition Factor Agreements**").  As of the date of this Motion, the amount owing to the Lender under the Pre-Petition Factor Agreements is $1,117,119.26 (the "**Factor Secured Debt**").

4.       Pursuant to the Pre-Petition Factor Agreements, the Debtor receives from Lender 80% of each account receivable sold to Lender on the date the A/R is transferred to Lender and receives the remaining 20% of each A/R sold to Lender at the time the A/R is collected by the Lender.  Pursuant to the Pre-Petition Factor Agreements, the Debtor is obligated to make the following payments to Lender: (i) monthly interest payments to Lender under the Pre-Petition Factor Agreements in the amount of 3.5% above the Prime Rate; (ii) processing fees equal to

**AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999**

$.35 for each transfer to Lender from Debtor's account debtors; (iii) statement fees equal to $.85 per statement issued by Lender to Debtor's account debtors, plus any cost of first class postage; and (iv) a collateral monitoring fee equal to 0.45% of the outstanding advanced to Debtor in the calendar month preceding the month for which the monitoring fee is calculated (the "**Factor Obligations**"). *See* Exhibit "C."

5.    In the one-year period preceding the commencement of this case, the Factor Obligations have averaged approximately $17,500 per month.

6.    Prior to execution of the Pre-Petition Factor Agreements, the Debtor and Debtor's affiliate, Advance Case Parts RE Holdings, LLC ("**ACP Real Estate**"), were co-obligors on a Small Business Administration loan with Newtek Small Business Finance, LLC (the "**SBA Lender**")[2] for a principal balance of $3,033,000.00 secured by a first position lien on all assets of the Debtor and ACP Real Estate (the "**SBA Loan**"). The SBA Loan was used by the Debtor and ACP Real Estate to *inter alia*: (i) allow ACP Real Estate to acquire commercial real property that the Debtor currently leases from ACP Real Estate for its operations; (ii) payoff certain existing secured indebtedness by Debtor and ACP Real Estate; and (iii) provide Debtor with additional operating capital.    As of the date of this Motion, the amount owing to the SBA Lender under the SBA Loan is $3,036,872.71 (the "**SBA Secured Debt**").

7.    Prior to the commencement of this case, the Lender and SBA Lender executed two intercreditor agreements wherein the SBA Lender subordinated its first position lien in favor of Lender as to Debtor's inventory, accounts, and any proceeds derived from any inventory or accounts (the "**Intercreditor Agreements**").

---

[2] Lender and SBA Lender are affiliated entities that are independently operated.

8.      As security for the payment of all Factor Secured Debt, the Debtor granted to Lender pursuant to the Pre-Petition Factor Agreements and the Intercreditor Agreements documents (collectively, the "**Pre-Petition Loan Documents**")[3], security interests in and liens (collectively, the "**Pre-Petition Liens**") upon all assets of the Debtor, including, without limitation, all of Debtor's accounts, inventory, deposits, and any proceeds of the aforementioned collateral (all such personal property, as the same existed on the Petition Date, together with all cash and non-cash proceeds thereof, the "**Pre-Petition Collateral**").

9.      As of the Petition Date, the Debtor estimates that the Pre-Petition Collateral consists of approximately: (i) $55,000 currently on deposit in the Debtor's operating and checking accounts; (ii) $560,000 of accounts receivable that are less than 90 days old; and (iii) $550,000 in existing inventory.

10.      In connection with the Debtor's proposed use of Cash Collateral hereunder and in order to provide the Lender with adequate protection for the aggregate diminution of the Cash Collateral resulting from the Debtor's use thereof, the Debtor has agreed, subject to approval of this Court, that the Lender, shall have, *nunc pro tunc* as of the commencement of this Chapter 11 case, a replacement lien pursuant to 11 U.S.C. §361(2) on and in all property of the Debtor acquired or generated after the Petition Date, but solely to the same extent and priority, and of the same kind and nature, as the property of the Debtor securing the prepetition obligations to the Lender under the Pre-Petition Loan Documents.

11.      In addition, the Debtor shall pay Lender adequate protection payments of $17,500 per month (the "**Adequate Protection Payments**").  As detailed previously herein, prior to the Petition Date, the median monthly payments paid by the Debtor to Lender under the Pre-Petition Loan Documents was approximately $17,500 per month.  Thus, the Debtor asserts that the

---

[3] A true and correct copy of the Pre-Petition Loan Documents are attached hereto as **Composite Exhibit "C."**

**AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999**

proposed Adequate Protection Payments will prevent the diminution in value of the Lender's existing liens.

12.     For avoidance of doubt, the Lender shall not have or be granted a replacement lien on or against any claims or causes of action arising under Sections 542 through 550 of the Bankruptcy Code (the "**Avoidance Actions**") or on or against the proceeds of the Avoidance Actions.

13.     In the event that diminution occurs in the value of Cash Collateral from and after the Petition Date as a result of the Debtor's use thereof in an amount in excess of the value of the replacement liens granted herein and the Adequate Protection Payments, then the Lender shall be granted an administrative claim under section 507(b) of the Bankruptcy Code with priority over all other administrative expense claims, subject to the Carve Out, as hereinafter defined.

14.     The Debtor proposes to use the Cash Collateral strictly in accordance with the terms of the Budget prepared by the Debtor and consented to by the Lender.  The Budget covers a 13-week period from the Petition Date through July 12, 2019.  The Debtor also requests that it be authorized: (i) to exceed any line item on the Budget by an amount equal to ten percent (10%) of each such line item; or (ii) to exceed any line item by more than ten percent (10%) so long as the total of all amounts in excess of all line items for the Budget do not exceed ten percent (10%) in the aggregate of the total Budget.

15.     The Debtor requests that the replacement liens and administrative expense claims granted to the Lender pursuant to the terms hereof be at all times subject and junior to: (i) the fees of the Office of the United States Trustee pursuant to 28 U.S.C. § 1930; (ii) any court costs, and (iii) the fees and expenses for Court approved professionals for the Debtor in the amounts and as set forth in the Budget (collectively, the "**Carve Out**").

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL  33301-2999

16.     Supplemental to the replacement liens provided to the Lender hereunder, the Debtor will furnish the Lender with such financial and other information as required by the Pre-Petition Loan Documents or other reports as the Lender reasonably requests.

17.     The replacement liens granted to the Lender hereunder in connection with the use of the Cash Collateral shall be valid and perfected without the need for the execution or filing of any further documents or instruments.

## APPLICABLE AUTHORITY FOR RELIEF REQUESTED

### A.     **The Court Should Approve the Debtor's Requested Use of Cash Collateral Because the Lender Consents to Such Use.**

18.     A debtor's use of estate property is governed by Section 363 of the Bankruptcy Code.  Section 363(c)(l) provides that a debtor may use estate property in the ordinary course of business without notice or a hearing.  Section 363(c)(2) imposes specific limitations upon property that constitutes cash collateral and provides that a debtor can only use, sell or lease cash collateral either if the entity with an interest in the cash collateral consents or the Court authorizes such use.  As set forth in the First Day Declaration, the Debtor has been working with the Lender over the past several months in connection with the exploring various alternatives concerning the restructuring of the obligations owed the Lender. The Debtor has reached an agreement with the Lender regarding the proposed use of Cash Collateral pursuant to the Budget and the Proposed Order attached to this Motion.  The agreement reached with Lender complies with the Court Guidelines and is similar in form and substance as cash collateral agreements previously approved in this District and by this Court in similar Chapter 11 proceedings. Accordingly, this Court should approve the Debtor's use of the Lender's Cash Collateral pursuant to Section 363(c)(2) of the Bankruptcy Code under the terms of Debtor's agreement with Lender.

**AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999**

**B.      The Court Should Enter an Order Authorizing the Continued Use of Cash Collateral Because the Debtor Is Providing the Lender with Adequate Protection.**

19.      Pursuant to the terms hereof, the Debtor is providing and will provide adequate protection to the Lender as contemplated and required by Sections 361, 363(c)(2)(B) and 363(e), respectively, and hereby seeks the Court's approval thereof. The Bankruptcy Code does not explicitly define "adequate protection," but does provide a non-exclusive list of the means by which a debtor may provide adequate protection, including "other relief" resulting in the "indubitable equivalent" of the secured creditor's interest in such property. *See* 11 U.S.C. § 361. What constitutes adequate protection must be evaluated on a case-by-case basis. *In re Swedeland Dev.  Group Inc.,* 16 F.3d 552, 564 (3d Cir. 1994) *(citing In re O'Connor,* 808 F.2d 1393, 1396-97 (10th Cir. l987)); *In re Martin,* 761 F.2d 472, 476 (8th Cir. 1985).

20.      Adequate protection is meant to ensure that the secured lender receives the value for which it originally bargained.  *Swedeland*, 16 F.3d at 564 *(citing O'Connor,* 808 F.2d at 1396) ("the whole purpose of adequate protection for a creditor is to ensure that the creditor receives the value for which he bargained pre bankruptcy").  Courts have noted that "the essence of adequate protection is the assurance of the maintenance and continued recoverability of the lien value during the interim between the filing . . . and the confirmation." *In re Arriens,* 25 B.R. 79, 81 (Bankr. D. Or. 1982).  The focus of the requirement is to protect a secured creditor from diminution in value during the use period. *See In re Kain,* 86 B.R 506, 513 (Bankr. W.D. Mich. 1988); *In re Becker Indus. Corp.,* 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Ledgmere Land Corp.,* 116 B.R. 338, 343 (Bankr. D. Mass. 1990).

21.      The Debtor's requested use of Cash Collateral and the protections afforded to the Lender herein, including but not limited to, replacement liens, monthly reporting as required under the Loan Documents, and allowance of super priority administrative claims (to the extent

of any diminution in the Lender's collateral), in light of the circumstances, are reasonable, appropriate, and sufficient to satisfy the legal standard of "adequate protection" and will serve to maintain the value of the Lender's Collateral.

      **(a)**    **The Use of Cash Collateral Will Preserve the Debtor's Going Concern Value, Which Will Inure to the Benefit of the Estate.**

22.    The continued operation of the Debtor's business will preserve and maintain its going concern, enterprise value and enable the Debtor to continue to operate and maximize its value in the reorganization process. However, as discussed above, if the Debtor is not allowed to use Cash Collateral, its business operations will be substantially interrupted. This would result in a significant diminution in the value of the Debtor's assets (including the Cash Collateral) to the detriment of the Debtor's creditors and interest holders and other harm to the estate.

23.    It is well established that a bankruptcy court, where possible, should resolve issues in favor of preserving the business of the debtor as a going concern:

> A debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use "cash collateral" in its effort to rebuild. Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated.

*In re George Ruggiere Chrysler-Plymouth, Inc.,* 727 F.2d 1017, 1019 (11th Cir. 1984).

24.    Accordingly, courts authorize the use of cash collateral to enhance or preserve the debtor's going concern value. For example, in *In re Stein,* 19 B.R. 458 (Bankr. E.D. Pa. 1982), the court allowed a debtor to use cash collateral where the secured party was undersecured, finding that the use of cash collateral was necessary to the debtor's continued operations and the creditor's "secured position can only be enhanced by the continued operation of the [debtor's business]" *Id.* at 460; *see also Federal Nat. Mort. v. Dacon Bolingbrook Assocs.,* 153 B.R. 204,

214 (N.D. Ill. 1993) (security interest protected to extent debtor reinvested rents in operation and maintenance of the property); *In re Constable Plaza Assoc.,* 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (debtor's reinvestment of rents to maintain and operate office building "will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the] mortgage"); *In re  Dynaco Corp.,* 162 B.R. 389, 395-96 (Bankr. D.N.H. 1983) (finding that the alternative to the debtor's use of cash collateral, termination of its business, would doom reorganization and any chance to maximize value for all creditors); *In re Karl A. Neise, Inc.,* 16 B.R. 600, 602 (Bankr. S.D. Fla. 1981) (marginally secured creditor adequately protected by lien on postpetition property acquired by debtor; debtor can use cash collateral "in the normal operation of their business").

25.     As discussed above, the Debtor will use Cash Collateral in the ordinary course of its business to, among other things, continue to operate and maintain its operations in anticipation of restructuring its debts through the reorganization process. If the Debtor cannot continue to use Cash Collateral, it likely will be forced to cease operations and convert this cases to Chapter 7.  This cessation would irreparably damage the Debtor's business by causing, among other things, employee attrition, lost revenues, loss of business reputation and loss of ability to sell certain business segments.  By contrast, granting authority will allow the Debtor to maintain operations and preserve the going concern value of its business, which will inure to the benefit of the Lender, all other creditors, and interest holders.

      **(b)     The Lender is Adequately Protected by the Grant of Replacement Liens on Post-Petition Assets and the Allowance of a Superpriority Administrative Expense Claim.**

26.     The Bankruptcy Code expressly provides that "granting a replacement lien is a means of adequate protection." 11 U.S.C. § 361(2). Granting replacement liens provides ample adequate protection of the secured creditor's interest in cash collateral. *See, e.g., In re O'Connor*,

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL  33301-2999

808 F.2d at 1393; *In re Dixie-Shamrock Oil & Gas. Inc.,* 39 B.R. 115, 118 (Bankr. M.D. Tenn. 1984). The Debtor will adequately protect the Lender's interests in Cash Collateral by, among other things, providing post-petition security interests in the Debtor's assets of the same type as the Lender held pre-petition to the extent the Debtor's use of Cash Collateral results in a post-petition decrease in the value of the Collateral securing the Lender's claims. Such post-petition security interests will be of the same validity and priority as the Lender's pre-petition liens and security interests.

27.    The Debtor believes that use of Cash Collateral pursuant to the terms and conditions set forth above is fair and reasonable and adequately protects the Lender. The combination of: (i) the Debtor's ability to preserve the going concern value of the business with the use of Cash Collateral; (ii) the post-petition liens granted to the Lender; (iii) the right to assert super-priority administrative expenses granted to the Lender herein, and (iv) providing the Lender with the other protections set forth herein, including the availability of financial reporting. For all of the reasons stated above, this Court's approval of the Debtor's use of the Lender's Cash Collateral is proper herein. A proposed Interim Order granting the Debtor's use of Cash Collateral on the terms set forth herein is attached hereto as **Exhibit "B."**

**WHEREFORE**, the Debtor respectfully requests that the Court enter the Interim Order: (A) authorizing the Debtor (i) to use the Cash Collateral of the Lender pursuant to the terms set forth above and in accordance with the Budget, (ii) continue factoring A/R under the Pre-Petition Loan Documents; (iii) pay Lender Adequate Protection payments as detailed herein; and (iv) to grant the replacement liens and super-priority administrative expense claims as set forth above in connection with the use thereof, and (B) setting a final hearing hereon approximately thirty (30)

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

days after the entry of the Interim Order on this Motion, and for such other and further relief as

the Court deems just and proper.

Dated: April 16, 2019.

Respectfully Submitted,

**AKERMAN LLP**
*Proposed Attorneys for Debtor-in-Possession*
350 East Las Olas, Blvd., Suite 1600
Ft. Lauderdale, Florida 33301
Tel: (954) 463-2700 / Fax: (954) 463-2224

By:  ___/s/ *Eyal Berger*_____
    Eyal Berger, Esq.
    Florida Bar No. 11069
    eyal.berger@akerman.com

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served this

April 16, 2019 via CM/ECF and/or U.S. Mail upon all parties listed on the attached service list.

> **AKERMAN LLP**
> *Proposed Attorneys for Debtor-in-Possession*
> 350 East Las Olas, Blvd., Suite 1600
> Ft. Lauderdale, Florida 33301
> Telephone: (954) 463-2700
> Facsimile: (954) 463-2224
>
>
> By: ____ */s/ Eyal Berger* ____
>     Eyal Berger, Esq.
>     Florida Bar No. 11069
>     eyal.berger@akerman.com
>     Catherine Douglas, Esq.
>     Fla. Bar No. 85843
>     catherine.douglas@akerman.com

## SERVICE LIST

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130

Howard S. Toland, Esq.
Mitrani, Rynor, Adamsky & Toland P.A.
1200 Weston Road
Penthouse
Weston, FL 33326

Ally
PO Box 9001948
Louisville, KY 40290-1948

CDS Business Services
60 Hempstead Ave
PO Box 380
West Hempstead, NY 11552

Corporation Service Company, as Rep
PO Box 2576
Springfield, IL 62708

Crossroads Financial Group, LLC
200 S. College St
Suite 1400
Charlotte, NC 28202

CT Corporation System, as Rep.
330 N Brand Blvd
Ste 700
Attn. SPRS
Glendale, CA 91203

Financial Agent Services
PO Box 2576
Springfield, IL 62708

Newtek Business Credit
60 Hempstead Ave
5th Floor
West Hempstead, NY 11552

Newtek Business Credit
1981 Marcus Ave, Ste 130
New Hyde Park, NY 11042

Newtek Business Services Corp.
Attn. Legal Dept.
212 W. 35th St., 2nd FL
New York, NY 10001

Newtek Small Business Finance, LLC
60 Hempstead Ave
2nd FL
West Hempstead, NY 11552

Secured Lender Solutions, LLC
PO Box 2576
Springfield, IL 62708

**AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999**